Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TRUSTEES OF INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 711 HEALTH & WELFARE FUND,** *et al.*,<br><br>**Plaintiffs,**<br><br>v.<br><br>**INDEPENDENT WALLCOVERING, INC.,**<br><br>**Defendant.** | Civil Action No.: 20-7084 (ES) (MAH)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is a renewed motion for default judgment filed by all Plaintiffs (collectively, "Plaintiffs") against Defendant Independent Wallcovering, Inc. ("Defendant") pursuant to Federal Rule of Civil Procedure 55(b)(2). (D.E. No. 21 ("Motion") & D.E. No. 21-1 ("Mov. Br.")). The Motion is unopposed. The Court has considered Plaintiffs' submissions and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court **GRANTS** Plaintiffs' Motion.

**I.    BACKGROUND**

This case arises from Defendant's alleged breach of contract. Plaintiffs are three employee benefit plans within the meaning of the Employee Retirement Income Security Act ("ERISA") (collectively, the "Funds"[1]), the trustees of the Funds (collectively, the "Trustees"[2]), and

---

[1]  The Funds are International Union of Painters and Allied Trades District Council 711 Health & Welfare Fund, International Union of Painters and Allied Trades District Council 711 Vacation Fund, and Painters District Council 711 Finishing Trades Institute.

[2]  The Trustees are Trustees of International Union of Painters and Allied Trades District Council 711 Health

1

International Union of Painters and Allied Trades District Council 711 (the "Union").  (D.E. No. 7 ("Amended Complaint" or "Am. Compl.") ¶¶ 5–8).  The Funds are labor-management trust funds organized and operated pursuant to a Trust Agreement and Collective Bargaining Agreement ("CBA") in accordance with § 302(c)(5) of the Labor Management Relation Act ("LMRA").  (Am. Compl. ¶¶ 5–7); *see also* 29 U.S.C. § 186(c)(5).  Defendant is an employer within the meaning of ERISA.  *See* 29 U.S.C. § 1002(5); (Am. Compl. ¶ 16).  Plaintiffs allege that Defendant agreed to abide by the terms and conditions of the CBA.  (Am. Compl. ¶ 20).

Plaintiffs initiated this action on June 10, 2020, based on Defendant's alleged breach of contract.  (D.E. No. 1).  Plaintiffs filed their Amended Complaint on July 23, 2020.  In Count One, Plaintiffs allege that Defendant failed to post a $50,000.00 surety bond or cash equivalent pursuant to the CBA.  (Am. Compl. ¶¶ 19–26).  Plaintiffs asked the Court to order Defendant to post the surety bond, refrain from further breach, perform its obligations under the CBA, and pay reasonable attorney's fees and costs.  (*Id.* ¶ 33).  In Count Two, Plaintiffs allege that Defendant failed to permit Plaintiffs to audit its records and to determine the amount of fringe benefit contributions owed as required by the CBA.  (*Id.* ¶¶ 34–38).  As relief, Plaintiffs seek "an audit of all records under the actual or constructive control" of Defendant or other methods to determine the amount of contributions due.  (*Id.* ¶ 39).  In Counts Three and Four, Plaintiffs allege that Independent failed to provide fringe benefit contributions and dues check-offs as required by the CBA.  (*Id.* ¶¶ 41 & 45).  Plaintiffs seek contributions and dues as determined after the audit, as well as liquidated damages, interests, costs, and fees.  (*Id.* ¶¶ 43 & 47).  Finally, in Count Five, Plaintiffs sought to "[p]ermanently restrain and enjoin" Defendant "from continuing to violate the terms of the current CBA[.]"  (*Id.* ¶ 51).

---

& Welfare Fund, Trustees of International Union of Painters and Allied Trades District Council 711 Vacation Fund, and Trustees of Painters District Council 711 Finishing Trades Institute.

On September 28, 2020, the Clerk of the Court entered default against Defendant. On March 19, 2021, Plaintiffs filed their first motion for default judgment. (D.E. No. 16). On November 10, 2021, the Court denied Plaintiffs' motion for failure to: (i) establish that service of process was proper, (ii) establish that they had sufficiently pleaded legitimate causes of action or show the entitlement of *each* plaintiff to the relief sought, and (iii) provide support for the injunctive relief sought. (D.E. No. 18 at 2–3). The Court denied Plaintiffs' motion without prejudice to their ability to file a renewed motion for default judgment. (*Id.* at 3–4). The Court granted leave for Plaintiffs to drop insufficiently pleaded claims to the extent necessary. (*Id.* at 4).

On December 31, 2021, Plaintiffs filed the instant Motion, attaching in relevant part exhibits relevant to service as well as an excerpt of the CBA and related documents. (D.E. No. 21-3, Exs. A–D & J–M to D.E. No. 21-1 ("Feehan Cert")). In their moving brief, Plaintiffs advise the Court that they elect to drop from Count One "the equitable relief sought for a preliminary injunction and specific performance," but otherwise retain the relief sought in Count One for an order requiring Defendant to post a surety bond or cash equivalent. (Mov. Br. at 1). In addition, Plaintiffs advise that they elect to drop Count Five. (*Id.*). As such, Plaintiffs relinquish any claims for equitable relief, but otherwise maintain their remaining claims arising from Defendant's alleged breach of the CBA. (*See id.*).

Plaintiffs specifically request the Court to order: (i) "Defendant to provide a surety bond or cash bond equivalent in the amount of $50,000.00, with Plaintiffs as [obligees];" (ii) judgment "in favor of Plaintiffs in the amount of $50,000.00" if Defendant "fails to provide a surety bond or cash bond equivalent" within fourteen (14) days of the entry of default judgment; (iii) Defendant to submit to a payroll audit, "remit to the Plaintiffs the amount of benefit contributions and union dues found to be due and owing" in accordance with the audit; and (iv) Defendant to pay attorney's

3

"fees and costs in the amount of $3,131.00." (Mov. Br. at 26). Defendant has failed to appear or otherwise respond to the Motion.

## II.     LEGAL STANDARD

A district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against it. Fed. R. Civ. P. 55(a) & 55(b)(2). To obtain a default judgment, a plaintiff must first request entry of default by the Clerk of Court. *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). Once default is entered, a plaintiff seeking default judgment must then file a motion with the district court requesting relief. Fed. R. Civ. P. 55(b)(2).

"[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). "Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-0119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010) (citations omitted). Then, "the Court must determine (1) whether there is sufficient proof of service; (2) whether a sufficient cause of action was stated; and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (citations omitted). In making these determinations, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (citations omitted). "While the court may conduct a hearing to determine the damages amount, a damages determination may be made without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgment." *Days Inns*

4

*Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (cleaned up) (citations omitted).

## III.   DISCUSSION

### A.   Jurisdiction

For the reasons provided in its November 10, 2021 Letter Order, the Court finds that it has both personal jurisdiction over Defendant, and subject matter jurisdiction over the instant action pursuant to 29 U.S.C. § 185.  (*See* D.E. No. 18 at 2).

### B.   Service of Process

To show proper service of process, Plaintiffs initially submitted proof of service on Defendant's "Custodian of Records"—John Sansone.  (Mov. Br. at 5–6; *see also* D.E. No. 9).  However, Plaintiffs had failed to provide any legal basis as to whether service on a "Custodian of Records" in this instance was proper.  (D.E. No. 18 at 3).  In the instant Motion, Plaintiffs assert that they have since provided sufficient factual and legal support for proper service.  (Mov. Br. at 4–7).  For the following reasons, the Court agrees.

Pursuant to Rule 4, a plaintiff may serve a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).  Alternatively, a plaintiff may serve a corporation in the manner prescribed for serving an individual in accordance with state law.  *Id.* 4(h)(1)(A).  In pertinent part, the New Jersey Court Rules provide that a plaintiff may serve a corporation by serving a copy of the summons and complaint "on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation, or on a person at the registered office of the corporation in charge thereof." N.J. Ct. R. 4:4-4(a)(6).

It is a plaintiff's burden to show service was made on an individual who "qualifies as an appropriate person to receive service under any of the categories set forth in the rule." *See Fletcher v. Gateway Grp. One*, No. 20-3413, 2021 WL 2651254, at *6 (D.N.J. June 28, 2021) (noting that plaintiff has the burden to prove the validity of service on a "Custodian of Records"). Specifically, whether an individual may be considered a managing or general agent "depends on a factual analysis of that person's authority within the organization. One occupying this position typically will perform duties which are sufficiently necessary to the corporation's operations." *Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 513 (3d Cir. 1971) (citations omitted). Further, service upon a corporation's employee under New Jersey Court Rule 4:4-4(a)(6) is proper if that individual is "so integrated with the organization that she will know what to do with the papers" and the representative stands "in a position to render it fair, reasonable, and just to imply the authority to receive service." *J&J Sports Prods., Inc. v. Los Menores Barber Shops, LLC*, No. 18-8825, 2021 WL 5280953, at *2 (D.N.J. Nov. 11, 2021) (cleaned up) (citations omitted).

Plaintiffs point to three submissions to show that service of process on Mr. Sansone was proper. (Mov. Br. at 6). First, Plaintiffs point to an April 27, 2021 report, generated by the New Jersey Government Services website, which identifies John Sansone as Defendant's "Secretary" and one of only three "[p]rincipals" and "most recently reported officers/directors." (*Id.* (citing D.E. No. 21-3, Ex. K to Feehan Cert. at 49–50)).[3] Second, Plaintiffs point to proof of service on Sansone dated May 11, 2021, in a separate case brought in this District against Defendant, wherein Sansone accepted service as Defendant's "President." (*See id.* (citing D.E. No. 21-3, Ex. L to

---

[3] Unless otherwise noted, pin cites to Docket Entry number 21-3 refer to the pagination automatically generated by the Court's electronic filing system.

Feehan Cert. at 53)).[4]  Third, Plaintiffs point to an April 19, 2021 email wherein Sansone indicated authority to bind Defendant to obtain the surety bond and to schedule the payroll audit in accordance with the CBA.  (*Id.* at 6–7 (citing D.E. No. 21-3, Ex. M to Feehan Cert. at 55)).

The Court finds Plaintiffs have sufficiently shown that service of process on Defendant was proper.  Though Sansone identified himself as "Custodian of Records" to the process server in this matter and is listed as a secretary on the New Jersey Government Services report, Sansone appears as one of only three of Defendant's "[p]rincipals" or "officers/directors" on that same report.  (*See id.* at 6 (citing D.E. No. 21-3, Ex. K to Feehan Cert. at 49–50)); *see also Abarca v. KC Consulting Grp., Inc.*, No. 16-0213, 2018 WL 2215516, at *3 (D.N.J. May 14, 2018) (finding service of process proper on corporation where complaint and summons was served on the "principal and officer").  Plaintiffs' submission indicating that Sansone self-identified as Defendant's "President," further supports proper service.  *See Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Cape Sign Serv., Inc.*, No. 20-7262, 2021 WL 5564238, at *2 (D.N.J. Nov. 29, 2021) (finding that service was "properly effectuated" when made on "the president of Defendant").  In addition, Plaintiffs' email submission indicates that Sansone had authority to act on behalf of Defendant in connection with the CBA.  (*See* Mov. Br. at 6–7 (citing D.E. No. 21-3, Ex. M to Feehan Cert. at 55)).  Thus, it appears that Sansone performed duties "sufficiently necessary" to Defendant's operations and compliance with the CBA such that service was proper under Rule 4(h)(1)(B).  *See Gottlieb*, 452 F.2d at 513 (citations omitted).  Further, these facts show (i) Sansone was "integrated with the organization" and its compliance with the CBA such that he would "know what to do with the papers" and (ii) was thus

---

[4]  The Court notes that the plaintiffs' motion for default judgment in that case, *Trustees of International Union of Painters and Allied Trades District Council 711 Health & Welfare Fund, et al. v. Independent Wallcovering, Inc.*, No. 21-9956, was granted.  (D.E. No. 13).

"in a position to render it fair, reasonable and just to imply [his] authority to receive service[,]" making service proper under both Rule 4(h)(1)(A) and New Jersey Court Rule 4:4-4(a)(6). *See J&J Sports Prods., Inc*, 2021 WL 5280953, at *2 (cleaned up) (citations omitted). Accordingly, the Court finds that Defendant was properly served.

### C. Sufficient Causes of Action

Plaintiffs allege that Defendant did not comply with the CBA by (i) failing to post a $50,000.00 surety bond (Count One); (ii) failing to permit Plaintiffs to audit its records and to determine the amount of fringe benefit contributions owed (Count Two); (iii) failing to provide fringe benefit contributions (Count Three) and (iv) failing to provide dues check-offs (Count Four). (Am. Compl. ¶¶ 19–47).

Relevant to Counts One, Two, and Four, the elements of breach of contract are (i) a valid contract, (ii) breach by the defendant, and (iii) resulting damages. *Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, No. 11-0624, 2011 WL 4729023, at *3 (D.N.J. Oct. 5, 2011) (citing *Ramada Worldwide, Inc. v. Steve Young Kim,* No. 09-4534, 2010 WL 2879611 at *3 (D.N.J. July 15, 2010)). Further, relevant to Count Three, which alleges that Defendant failed to make fringe benefit contributions to the Funds, Section 515 of ERISA provides the following:

> "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

29 U.S.C. § 1145.

In accordance with the Court's November 10, 2021 Letter Order, Plaintiffs assert that they have sufficiently pleaded legitimate causes of action, by identifying the provisions in the CBA regarding Defendant's obligations. (Mov. Br. at 2–3). For the following reasons, the Court agrees.

### i. Failure to Post Bond (Count One)

Plaintiffs have stated a cause of action for breach of contract in Count One. Specifically, Plaintiffs allege that Defendant breached the CBA by failing to provide a $50,000.00 surety bond or cash bond equivalent. (Am. Compl. ¶¶ 20–26).

First, the Court finds that Plaintiffs have sufficiently alleged that the parties agreed to be bound by a valid contract. (*Id.* ¶¶ 20–21; Mov. Br. at 14 (citing D.E. No. 21-3, Exs. A, B & C to Feehan Cert.)). Plaintiffs point to the CBA that was entered into between the Union and Garden State Counsel Inc.[5] and covers the period of May 1, 2018 through April 30, 2021. (Mov. Br. at 14 (citing D.E. No. 21-3, Ex. A to Feehan Cert. at 2–8)). In addition, Plaintiffs point to a signature page signed on behalf of Defendant dated February 12, 2002 which provides, "THE PARTIES HERETO ARE DESIROUS OF ENTERING INTO AN AGREEMENT TO SET FORTH CONTROL AND REGULATE THE WAGES, HOURS, FRINGE BENEFITS, TERMS AND CONDITIONS OF EMPLOYMENT UNDER WHICH THE EMPLOYER WILL EMPLOY PAINTERS . . . AND ALLIED TRADES." (*Id.* (citing D.E. No. 21-3, Ex. C to Feehan Cert. at 20)). The signature page provides that the agreement shall be effective from May 1, 2000 through April 30, 2006. (*Id.*). That CBA contains a duration clause that states "[t]his Agreement shall be in full force and in effect until and including April 30, 2006, and shall continue from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other." (D.E. No. 21-3, Ex. D to Feehan Cert. at 24). According to Plaintiffs, Defendant "has not provided written notice to cancel the CBA between the parties" and thus

---

[5] Plaintiffs do not explain the role of Garden State Council Inc. (*See generally* Mov. Br.). This Court's review of the CBA suggests that the Garden Council manages contributions on behalf of employers who participate in the CBA. (D.E. No. 21-3, Ex. A to Feehan Cert. at 7 ("each Employer shall make a contribution . . . administered by the Garden State Council")). Regardless, the Court finds that Plaintiffs have sufficiently alleged that the parties agreed to be bound by a valid contract. (Mov. Br. at 14 (citing D.E. No. 21-3, Ex. C to Feehan Cert. at 20)).

9

"automatically bec[ame] a party to the subsequent CBA effective May 1, 2015 through April 30, 2018." (Feehan Cert. ¶¶ 3–4). Thus, the Court also finds that Defendant became a party to the CBA at issue, effective May 1, 2018 through April 30, 2021. Thus, Plaintiffs have sufficiently alleged that the parties agreed to be bound by a valid contract.

Second, Plaintiffs sufficiently allege breach of the CBA. In Count One, Plaintiffs allege that Defendant violated the CBA by failing to provide a $50,000.00 surety bond or cash equivalent in accordance with its terms. (Am. Compl. ¶¶ 19–26). Plaintiffs also allege that Defendant has "failed to make fringe benefit contributions" in lieu of the surety bond. (*Id.* ¶ 41). Plaintiffs point to Article XX Section 2(g) of the CBA which requires "[e]ach Employer . . . to deposit with the Trustees . . . either cash or a surety company bond. . . in the amount of fifty thousand dollars[.]" (Mov. Br. at 15 (quoting D.E. No. 21-3, Ex. A to Feehan Cert. at 6)). Further, Article XX Section 2(g)(1) provides that "[i]n lieu of the surety bond[,] an Employer may choose to pay their fringe benefits on a weekly basis." (D.E. No. 21-3, Ex. A to Feehan Cert. at 6). Thus, the Court finds that Plaintiffs have identified the provisions in the CBA regarding Defendant's obligations relating to the surety bond and have sufficiently alleged breach of the CBA under Count One.

Third, Plaintiffs have also alleged damages, namely the failure to provide a $50,000.00 cash or surety company bond. (Am. Compl. ¶¶ 19–26). In addition, Plaintiffs sufficiently show that the Trustees and the Funds are the proper parties to seek relief for the alleged damages under Count One. (*See* Mov. Br. at 8).[6] First, Plaintiffs point to Article XX of the CBA, which contains the surety bond requirement and identifies the Funds that are seeking relief. (*Id.* (citing D.E. No. 21-3, Ex. A to Feehan Cert. at 4)). Second, Plaintiffs point to Article XX Section 2(g) of the CBA,

---

[6] The Court notes that, in its Moving Brief, Plaintiffs use "Funds" to collectively refer to "Plaintiffs, Trustees of International Union of Painters and Allied Trades District Council Health & Welfare Fund, et. al." but ***not*** "IUPAT District Council ("DC 711" or "Union")." (*See* Mov. Br. at 1). Thus, this Court interprets Plaintiffs' reference to "Funds" in its Moving Brief to refer to the "Trustees" and "Funds" as defined in this Opinion.

10

as quoted above, which states that "[e]ach Employer shall be required . . . to deposit with the *Trustees* . . .either cash or a surety company bond . . . in the amount of fifty thousand dollars ($50,000.00)[.]" (*See id.* (quoting D.E. No. 21-3, Ex. A to Feehan Cert. at 6 (emphasis added))).

### ii. Failure to Permit Audit (Count Two)

Plaintiffs have stated a cause of action for breach of contract in Count Two. Specifically, Plaintiffs allege that Defendant violated the CBA by failing to permit Plaintiffs to audit its records and to determine contributions owed. (Am. Compl. ¶¶ 34–39).

First as noted above, the Court finds that the CBA is a valid contract. Second, the Court finds that Plaintiffs have alleged breach. Plaintiffs point to Article XX Section 3 of the CBA, which states that "[t]he trustees shall have the authority to have a certified public accountant audit the . . . relevant records of the Employer for the purpose of determining the accuracy of contributions to each respective Fund." (Mov. Br. at 9 (quoting D.E. No. 21-3, Ex. A to Feehan Cert. at 6)). In addition, Plaintiffs allege that Defendant agreed to abide by the General Collection Policy because Article XX Section 2(e) of the CBA states that the "parties hereto further agree to be bound by all actions taken by the Trustees." (Am. Compl. ¶ 21; Mov. Br. at 15 (citing D.E. No. 21-3, Ex. A to Feehan Cert. at 5)). And the General Collection Policy states that the Trustees have the right "to audit the financial records of the employers." (Mov. Br. at 9 (citing D.E. No. 21-3, Ex. B to Feehan Cert. at 10)). Plaintiffs allege that Defendant has failed to comply with a payroll audit. (Am. Compl. ¶ 38).

Third, Plaintiffs allege they have suffered damages as a result of Defendant's breach, namely the failure to audit, confirm amounts due, and collect amounts owed from Defendant. (Am. Compl. ¶ 38). In addition, Plaintiffs sufficiently show that the Trustees and Funds are the proper parties to seek relief for such damages under Count Two. (Mov. Br. at 10). To start, Plaintiffs

point to Article XX of the CBA, which contains the audit requirement and identifies the Funds that are seeking relief.  (*Id.* at 9 (citing D.E. No. 21-3, Ex. A to Feehan Cert. at 4)).  Next, Plaintiffs point to Article XX Section 3 of the CBA which states that "[t]he trustees shall have the authority to have a certified public accountant audit . . . relevant records of the Employer[.]" (*Id.* (quoting D.E. No. 21-3, Ex. A to Feehan Cert. at 6)).  Finally, Plaintiffs point to the General Collection Policy, which provides "[t]he Trustees have the legal right to exercise all remedies allowable under the Trust Agreement . . . including. . . [t]he right to establish a random audit program[.]" (*Id.* (citing D.E. No. 21-3, Ex. B to Feehan Cert. at 10).

### iii.   Failure to Remit Dues Check-Offs (Count Four)

Plaintiffs have stated a cause of action for breach of contract in Count Four.  Specifically, Plaintiffs allege that Defendant failed to remit dues check-offs as required by the CBA.  (Am. Compl. ¶¶ 44–47).

First, as noted above, the Court finds that there is a valid contract—the CBA.  Second, the Court finds that Plaintiffs have sufficiently alleged breach.  Plaintiffs point to, Article IV Paragraph 1 of the CBA, which establishes Defendant's obligations to remit dues check-offs by providing that, "[e]very employer signatory to this Agreement hereby agrees to deduct from the wages of any employee employed by such Employer during the term of this Agreement, administrative dues." (Mov. Br. at 12 (citing D.E. No. 21-3, Ex. J to Feehan Cert. at 46)).  And Defendant has allegedly failed to remit dues check-offs.  (Am. Compl. ¶ 45).

Third, Plaintiffs allege they have suffered damages as a result of Defendant's breach under Count Four, although due to Defendant's alleged failure to comply with the audit, Plaintiffs cannot plead the precise extent of Defendant's delinquency.  (*Id.* ¶ 46).  Nevertheless, the Court finds that Plaintiffs have sufficiently alleged damages by either not receiving payment of dues check-offs or

not being allowed to audit Defendant's records to determine the extent of the delinquency. (*Id.* ¶ 38). In addition, Plaintiffs sufficiently allege that the Union is the proper party to seek relief for such damages under Count Four. (Mov. Br. at 12). Plaintiffs point to Article IV Paragraph 1 of the CBA, which states that every employer will remit dues check-offs, "to the Union." (Mov. Br. at 12 (citing D.E. No. 21-3, Ex. J to Feehan Cert. at 46)).

### iv. Failure to make Fringe Benefit Contributions (Count Three)

Plaintiffs have stated a cause of action for a violation of ERISA in Count Three. Specifically, Plaintiffs allege that Defendant failed to make fringe benefit contributions as required under the CBA. (Am. Compl. ¶¶ 40–43). Section 515 of ERISA provides that employers "obligated to make contributions to a multiemployer plan under the terms of. . . a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

First, Plaintiffs allege that the Funds are employee benefit plans within the meaning of ERISA. (Am. Compl. ¶¶ 5–7). Second, As Plaintiffs point out, Article XX Section 2(a) of the CBA establishes Defendant's obligation to make contributions, which states that "[f]or each hour or portion of an hour for which an employee receives pay, the Employer shall make a contribution[.]" (Mov. Br. at 10 (citing D.E. No. 21-3, Ex. A to Feehan Cert. at 5)). In addition, Article XX Section 3 provides that "[i]f an employer fails to make contributions to any Funds . . . such failure shall be deemed a violation of this Agreement[.]" (*Id.* at 18–19 (quoting D.E. 21-3, Ex. A to Feehan Cert. at 6)).

Plaintiffs state that they cannot allege the specific amount of Defendant's delinquency at this time without performing an audit of Defendant's account. (Am. Compl. ¶ 42). Nevertheless,

13

the Court finds that Plaintiffs have stated a sufficient cause of action under Section 515 of ERISA by alleging that Plaintiffs have failed to make fringe benefit contributions.  (*Id.* ¶ 41)

In addition, Plaintiffs assert that the Trustees and Funds are the proper parties to bring a claim for relief with respect to contribution delinquencies.  (Mov. Br. at 11).  Plaintiffs point to Article XX(1) of the CBA, which contains the contribution requirement and identifies the Funds that are seeking relief.  (*Id.* at 10 (citing D.E. No. 21-3, Ex. A to Feehan Cert. at 4)).  Further, the General Collection Policy provides that "[t]he Trustees have the legal right to exercise all remedies allowable under the Trust Agreement and under [ERISA] . . . including but not limited to. . . other acts that are necessary in order to collect Contributions due to the Funds[.]"  (D.E. No. 21-3, Ex. B to Feehan Cert. at 10).  Accordingly, Plaintiffs have stated sufficient causes of action in their Amended Complaint for purposes of default judgment.

### D.  Propriety of Default Judgment

The Court finds that default judgement is proper in this action.  To determine whether granting default judgment is proper, the Court must make factual findings as to "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).  First, the current record does not indicate any meritorious defense.  *See Malibu Media, LLC v. Deleon*, No. 15-3855, 2016 WL 3452481, at *3 (D.N.J. June 20, 2016) ("The Court may presume that a defendant who has failed to plead, defend, or appear has no meritorious defense.").  Second, Plaintiffs have been prejudiced by Defendant's failure to answer because Plaintiffs have been prevented from seeking relief.  *See Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding that plaintiff

would suffer prejudice if the court did not enter default judgment because plaintiff "has no other means of seeking damages for the harm allegedly caused by Defendant"). Third, with respect to whether default was the result of culpable conduct, Defendant has not participated in the litigation despite being properly served with the Amended Complaint over two years ago. *See, e.g.*, *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (finding that the defendant was culpable because "there was nothing before the Court to suggest that anything other than [the Defendant's] willful negligence caused her failure to file an answer"). Therefore, Defendant is culpable for defaulting in this case. Accordingly, default judgment against Defendant is proper.

### E.  Damages

When judgment in favor of a plan is awarded in an action to enforce Section 515 of ERISA, the court must award (i) unpaid contributions, (ii) interest on the unpaid contributions, (iii) the greater of interest on the unpaid contributions or liquidated damages, and (iv) reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2).

*Attorney's Fees and Costs.* "Pursuant to 29 U.S.C. § 1132 (g)(2)(D), the Court shall award attorney's fees and costs for actions brought to enforce 29 U.S.C. § 1145 of ERISA." *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund*, 2021 WL 5564238, at *3. "The starting point for a court's determination of reasonable attorney's fees is the lodestar calculation, which is the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate." *Id*. (citing *United Auto. Workers Local 259 Soc. Sec. Dept. v. Metro Auto Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007)).

Plaintiffs seek $2,579.50 in attorney's fees and $551.50 in costs. (Mov. Br. at 25). Plaintiffs attach a summary of attorney's fees and costs as well as computerized timesheets for legal services performed. (Mov. Br. at 25 (citing D.E. No. 21-3, Exs. H & I to Feehan Cert.)).

Counsel certifies that the fee in this matter is $2,579.50, reflecting the hourly rates of two attorneys at $175 per hour and three paralegals at the rate of $70 per hour. (Mov. Br. at 25 (citing D.E. No. 21-3, Ex. H to Feehan Cert. at 34)). The Court finds that the hourly rates and hours expended are reasonable in light of the nature of the case and services rendered. *See Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Sky High Mgmt., LLC*, No. 20-9339, 2021 WL 3561248, at *4 (D.N.J. Aug. 11, 2021) (finding that an attorney's hourly rate of $175.00, and a paralegal's hourly rate of $70.00 were reasonable); *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Sky High Mgmt., LLC*, No. 19-14638, 2020 WL 1698784, at *4 (D.N.J. Apr. 7, 2020) (finding attorney's fees in the amount of $4,105.50 reasonable in ERISA and breach of contract case on default judgment).

In addition, counsel certifies that the total costs incurred amounted to $551.50. (Feehan Cert. at ¶ 17). The Court finds that the total costs are reasonable. *See id.* at *4 (finding costs around $567.00 reasonable in ERISA and breach of contract case on default judgment).

Based on the statements and documents provided by Plaintiffs, the Court finds that there is a basis for awarding the attorney's fees and costs specified in the Motion. *See Days Inns Worldwide*, 2015 WL 5055318, at *2. Accordingly, Plaintiffs are entitled to attorney's fees in the amount of $2,579.50 and costs in the amount of $551.50.

***Other Relief.*** Plaintiffs also request that the Court order Defendant to provide a surety bond or cash equivalent in the amount of $50,000.00, and, if Defendant fails to do so within fourteen days of the entry of default, to enter judgment in favor of Plaintiffs in the amount of

$50,000.00. (Mov. Br. at 20–21 & 26). To support the entry of a monetary award of $50,000.00, Plaintiffs argue that the CBA contemplates Defendant's posting a surety or "cash equivalent." (Mov. Br. at 20). Plaintiffs further argue that "[i]f Defendant fails to abide by a Court order that merely orders it to obtain the surety bond or cash equivalent, the Plaintiff Funds will still be without the benefit of this security, and will therefore need to expend additional resources, and this Court's time, to compel Defendant Independent to produce the bond." (*Id.* at 20).

The CBA provides that Defendant must post a "cash or a surety company bond." (D.E. No. 21-3, Ex. A to Feehan Cert. at 6). Despite the Court's November 10, 2021 Letter Order directing Plaintiffs to provide factual or legal support for their request for a monetary award in the amount of $50,000.00 in the event that Defendant fails to provide a surety bond or cash equivalent, Plaintiffs have not sufficiently done so. (*See* D.E. No. 18 at 3; Mov. Br. at 20). Plaintiffs do not explain how entry of a monetary award is equivalent to a cash bond. Further, if Defendant fails to abide by a Court order to obtain the surety or cash bond, Plaintiffs may request that the judgment be enforced.

Finally, Plaintiffs request judgment in the amount of unpaid fringe benefit contributions and dues check-offs pending an audit of Defendant's accounts. (Am. Compl. ¶¶ 43 & 47; Mov. Br. at 26). As noted above, Plaintiffs assert they cannot plead the precise nature and amount of Defendant's delinquency of fringe benefit contributions and dues check-offs without an audit. (Am. Compl. ¶¶ 42 & 46). Therefore, Defendant shall submit to a payroll audit within thirty (30) days of the date of this Opinion. Upon completion of the audit, Plaintiffs shall submit a motion with the Court requesting judgment to be entered against Defendant for the amount of fringe benefit contributions and dues found to be due and owing in accordance with the audit, including interest and liquidated damages pursuant to 29 U.S.C. § 1132(g)(2).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' renewed motion for default judgment. An appropriate Order accompanies this Opinion.

**Dated**: October 3, 2022                                             */s/ Esther Salas*
                                                                                       **Esther Salas, U.S.D.J.**