**Not for Publication**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

TRUSTEES OF INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 711 HEALTH & WELFARE FUND, *et al.*,

          **Plaintiffs,**

     **v.**

INDEPENDENT WALLCOVERING, INC.,

          **Defendant.**

Civil Action No.: 20-7084 (ES) (MAH)

**OPINION**

**SALAS, DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiffs'[1] unopposed Motion for Enforcement of the Parties' Settlement Agreement. (D.E. No. 30 ("Motion") & D.E. No. 30-2 ("Mov. Br.")). Having carefully considered Plaintiffs' submissions and other relevant portions of the record without oral argument (*see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b)), and it appearing:

1. Plaintiff International Union of Painters and Allied Trades District Council 71—a labor organization—and Defendant Independent Wallcovering, Inc.—an employer—were parties to a collective bargaining agreement ("CBA"). (Am. Compl. ¶¶ 13–14 & 20). The CBA allegedly required, among other things, that Defendant make payments to the Funds, permit Plaintiffs to perform audits to determine the amount of those payments, and post a surety bond or cash deposit to secure its obligation to make those payments. (*Id.* ¶¶ 20–23, 35–36, 41, & 45).

---

[1] Plaintiffs International Union of Painters and Allied Trades District Council 711 Health & Welfare Fund, International Union of Painters and Allied Trades District Council 711 Vacation Fund, and Painters District Council 711 Finishing Trades Institute (collectively, the "Funds") are "the employer and employee trustees of [certain labor management trust funds]." (D.E. No. 7 ("Am. Compl.") ¶¶ 5–7).

2.      Plaintiffs originally commenced this action on June 10, 2020, (D.E. No. 1), and filed an Amended Complaint on July 23, 2020, (Am. Compl.).   Plaintiffs sought an order compelling Defendant to (i) submit to audits under the CBA; (ii) remit any payments owed as reflected in the results of those audits; and (iii) provide the Funds with a $50,0000 security deposit pursuant to the CBA.   (*See generally id.*).   Defendant did not timely respond to the Amended Complaint, and the Clerk of the Court entered default on September 28, 2020.   Plaintiffs filed an initial motion for default judgment on March 19, 2021, (D.E. No. 16), which the Court denied, without prejudice, by Order dated November 10, 2021, (D.E. No. 18).   Plaintiffs filed a renewed motion for default judgment on December 31, 2021, (D.E. No. 21), which the Court ultimately granted by Order dated September 30, 2022, (D.E. No. 23).

3.      Among other things, the September 30, 2022 Order (i) obligated Defendant to "provide either a cash or surety company bond in the amount of $50,0000"; (ii) required Defendant to submit to a payroll audit; and (iii) directed Plaintiff to file a motion, after completion of that audit, "requesting judgment to be entered against Defendant for the amount of fringe benefit contributions and union dues found to be due and owing in accordance with the audit, including interest and liquated damages, pursuant to 29 U.S.C. §1132(g)(2)." (D.E. No. 32).

4.      By letter dated November 4, 2024, Plaintiffs' counsel advised:   "Upon the completion of the Defendant's payroll audit, the parties entered into a Settlement Agreement to resolve the Defendant's delinquent obligations."   (D.E. No. 26 at 1; *see also* D.E. No. 30-3 ("Settlement Agreement")).   Counsel further represented that, pursuant to the Settlement Agreement, Defendant had executed a Consent Judgment, and that the Settlement Agreement authorized Plaintiffs to enter that judgment under certain circumstances.   (*See generally id.*).   Plaintiffs thus requested leave to file a motion to have the Court enter the Consent Judgment

2

against Defendant. (*Id.* at 1). The Court granted leave by Order dated November 7, 2024. (D.E. No. 27). Plaintiffs filed the instant application on November 19, 2025.[2] (D.E. No. 30).

5.          Several provisions of the parties' Settlement Agreement, (D.E. No. 30-3 at 3–11 (ECF Pagination)), are relevant here. For instance, Section 1, titled "Total Debt", provided that Defendant owed the Funds "contributions, interest, liquidated damages, and attorneys' fees/costs in the amount of $60,049.72 [(the "Total Debt")]," and provided an itemized breakdown of that sum. (Settlement Agreement at 1). The Settlement Agreement further provided that Defendant would "pay the Plaintiffs the Total Debt of **$60,049.72** in fifteen (15) monthly installment payments" in accordance with a set schedule. (*Id.* at 1–2). The Settlement Agreement also included language setting forth the parties' rights and obligations in the event of a default, including Defendant's right to cure any such default within 10 days of receiving notice of same from Plaintiff. (*Id.* at 4). With regard to situations in which Defendant breaches the Settlement Agreement and fails to timely cure its default, the Settlement Agreement provided:

> Plaintiffs may take whatever actions [they] consider[] reasonably appropriate to collect all amounts owed to [them] by [Defendant]. The Plaintiffs can recover the unpaid balance of the Total Debt plus interest of two percent (2%) above the prime rate charged by the Plaintiffs' depository bank as of January 1 and July 1, which interest shall remain in effect until the next interest rate determination. In addition, the Plaintiffs can recover all attorneys' fees and costs and related collection costs [they incur] as a result of a breach of this Agreement by [Defendant].

(*Id.* at 3).

---

[2]          While Plaintiffs filed an initial motion to enforce the Settlement Agreement on November 21, 2024, (D.E. No. 28), the Court denied that application, without prejudice, to give Plaintiffs the opportunity to file a brief in support. (D.E. No. 29). The Court also directed that Plaintiffs' revised submission "account for [their] legal entitlement to all amounts [they] seek[] to recover" and "provide updated information, supported by a sworn declaration and documentation as may be appropriate, regarding the interest and attorneys' fees owed through the date of submission." (*Id.*).

6. On November 14, 2023, Defendant executed a Consent Judgment. (D.E. No. 30-3 at 13–14 (ECF Pagination) ("Consent Judgment")). The Consent Judgment stated, in relevant part:

> Upon the occurrence of an event of default described in the Settlement Agreement dated July 2023 between the [Defendant] and Plaintiffs, [Defendant] authorizes the holder to move for judgment at any time against it and, in order to carry out this provision, authorize any attorney of any court to appear in the District of New Jersey to enter judgment against it in favor of the holder of this Consent Judgment, for the full amount of its liability less any payments made under the Settlement Agreement, plus reasonable attorneys' fees, applicable costs and interest.
>
> [Defendant] agrees that a judgment may be entered against it, upon the filing of an affidavit, executed and sworn to under the penalties of perjury, to which is attached a copy of this Consent Judgment, and which alleges the amounts then due to the Plaintiffs.

(*Id.*).

7. Plaintiffs represent that Defendant "remitted twelve (12) monthly installment payments of $4,003.31 totaling $48,039.72, representing payments due on July 15, 2023, through June 15, 2024." (D.E. No. 30-1 ("Bushinsky Cert.") ¶ 11). Defendant, however, "has failed to remit any subsequent monthly installment payments due from July 15, 2024[,] to September 15, 2024, pursuant to the installment payment schedule listed in [the Settlement Agreement]." (*Id.*).

8. Plaintiffs provided Defendant with formal notice of that default by letter dated August 30, 2024, and advised Defendant that it had ten days to cure the same. (D.E. No. 30-3 at 24 (ECF Pagination)). Defendant failed to do so. (Bushinsky Cert. ¶ 13).

9. "Because a settlement agreement is a form of contract, allegations of breached settlement obligations are governed by contract law." *Jacob's Limousine Transportation, Inc. v. City of Newark*, 688 F. App'x 150, 151 (3d Cir. 2017) (citing *Plymouth Mut. Life Ins. Co. v. Illinois Mid-Continent Life Ins. Co.*, 378 F.2d 389, 391 (3d Cir. 1967)). "A court must grant a motion to enforce if it finds that a defendant breached a duty created by a binding agreement and that the

4

breach caused the plaintiff to suffer damages." *Id.* at 151–52. In essence, the Court applies a breach of contract analysis. To establish a breach of contract claim under New Jersey law, which governs the terms of the parties' Settlement Agreement, (Settlement Agreement at 5), a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007); *see also DeCozen Chrysler Jeep Corp. v. Fiat Chrysler Automobiles, LLC*, No. 22-0068, 2025 WL 822995, at *3 (D.N.J. Mar. 13, 2025) ("To state a claim for breach of contract under New Jersey law, a plaintiff must allege facts demonstrating '(1) the existence of a valid contract; (2) that plaintiff performed under the contract; (3) the defendant's breach of the contract; and (4) damages resulting from the breach.'" (citation omitted)); *Goldfarb v. Solimine*, 245 A.3d 570, 577 (2021) (same) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57 (N.J. 2016)).

10.     Here, Plaintiffs have established each of the requisite elements for a breach of contract claim vis-à-vis the Settlement Agreement. First, the Settlement Agreement is a valid contract, as it was a negotiated agreement supported by valuable consideration: the parties' mutual resolution of their dispute. *See Goldfarb*, 245 A.3d at 578 ("To prevail on a claim of breach of contract, a party must show that a contract has been made, with an offer, acceptance, and consideration all present[.]"). Second, as described above, Defendant breached the Settlement Agreement by failing to make certain payments required thereunder. Third, it appears that Plaintiffs performed each of their obligations under the Settlement Agreement, including providing Defendant with formal, written notice of the aforementioned breaches. Finally, Defendant's breach—a failure to pay the sums required under the parties' Settlement Agreement—plainly

5

harmed Plaintiffs.  The Court therefore finds that Plaintiffs are entitled to enforcement of the Settlement Agreement.

11.    Plaintiffs now ask the Court to enter judgment against Defendant pursuant to the Consent Judgment.  The Court finds that, because of Defendant's default under Settlement Agreement and subsequent failure to cure, Plaintiffs are entitled to "the full amount of [Defendant's] liability less any payments made under the Settlement Agreement, plus reasonable attorneys' fees, applicable costs and interest."  (Consent Judgment).

12.    The Settlement Agreement required Defendant to pay a total of $60,049.72 across fifteen monthly installments.  (Settlement Agreement at 1–2).  Defendant paid twelve of those installments before defaulting, leaving a principal balance of $12,010.00.  Plaintiffs are entitled to that sum.  Plaintiffs are also entitled to interest on that balance at the rate specified in the Settlement Agreement, running from July 15, 2024 (the date of Defendant's initial default) through the present.  (Settlement Agreement at 3 ("The Plaintiffs can recover the unpaid balance of the Total Debt plus interest of two percent (2%) above the prime rate charged by the Plaintiffs' depository bank[.]")).  Finally, Plaintiffs may recover reasonable attorneys' fees and costs.  (Settlement Agreement at 3; Consent Judgment).  The Court will address Plaintiffs requests for awards of interest and attorneys' fees/costs in turn.

13.    Beginning with the interest accrued on the remaining principal, Plaintiffs have submitted a detailed chart reflecting the appropriate interest rate (which fluctuates based on the "Prime" rate) and associated interest calculations for each period running between July 16, 2024 (the day following Defendants' default) and November 13, 2025.  (D.E. No. 30-3 at 26 (ECF Pagination)).  The Court has reviewed those calculations and adopts them herein by reference. Thus, the Court finds that Plaintiffs are entitled to recover interest in the amount of $1,542.48

through November 13, 2025.  For the period of November 14, 2025 through December 9, 2025 (a span of 26 days), the contractual interest rate remained at 9.00%, thereby yielding simple interest in the amount of $77.00.  From December 10, 2025 through the present (a span of 177 days), the contractual interest rate has remained at 8.75%, thereby yielding simple interest in the amount of $509.60.  Adding those amounts to the interest owed through November 13, 2025, the Court finds that Plaintiffs are entitled to interest in the total amount of $2,129.08 through the date of judgment.

14.     Plaintiffs also seek an award of $6,181.00 in attorneys' fees and costs.  (Mov. Br. at 7–9).  "In determining whether [a] request for attorneys' fees is reasonable, the Court must calculate a 'lodestar' amount equal to the number of hours reasonably expended multiplied by a reasonable hourly rate."  *Sundesa, LLC v. Tejarah Int'l Inc.*, No. 20-2609, 2020 WL 6781579, at *1 (D.N.J. Nov. 17, 2020) (citing *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998)).  "In making this calculation, the Court must 'carefully and critically evaluate the hours and the hourly rate set forth by counsel.'"  *Id.* (quoting *J &J Snack Foods, Corp. v. Earthgrains Co.*, No. 00-6230, 2003 WL 21051711, at *6 (D.N.J. May 9, 2003)).  Here, Plaintiffs' counsel represents:

> [L]egal services were performed by Steven J. Bushinsky, Esquire, a member of the law firm of O'Brien, Belland & Bushinsky, LLC at the rate of $175.00 per hour; Daniel H. Mariani, Esquire, former associate, at the rate of $175.00 per hour; Diane Harman, paralegal, at the rate of $70.00 per hour; and Denielle D' Amore, paralegal, at the rate of $70.00 per hour.

(Bushinsky Cert. ¶ 24).  Plaintiffs' counsel further represents that those rates are "at or below the market rate for the legal services provided in this specialized area of ERISA fringe benefit collection law."  (*Id.* ¶ 23).  The Court agrees, based on its experience with the legal rates in this market.

7

15.     The Court must next determine whether the number of hours counsel devoted to the relevant tasks was reasonable.  Plaintiffs' counsel submitted their time records, which describe the actions counsel took in response to Defendant's breaches of the Settlement Agreement.  (D.E. No. 30-3 at 28–31 (ECF Pagination)).  Having reviewed those records, which reflect Defendant's serial breaches of the Settlement Agreement (i.e., beyond those underlying the instant application),[3] the Court finds that both the activities reflected therein and the time spent completing them are reasonable.  In turn, the Court finds that Plaintiffs are entitled to recover attorneys' fees in the amount of $6,181.00.  Plaintiffs have not identified any other costs incurred as a result of Defendant's breach.

16.     In sum, the Court finds that Plaintiffs are entitled to a judgment in the total amount of $20,320.08, comprised of the following:  (1) a principal amount of $12,010; (2) simple prejudgment interest on that amount (at the rate set forth in the Settlement Agreement) running from July 16, 2024 through today, in the amount of $2,129.08 and (3) attorneys' fees and costs in the amount of $6,181.00.  The Court will therefore **GRANT** the Motion and provide that relief.

An appropriate Order follows.

_s/ Esther Salas_
**Esther Salas, U.S.D.J.**

Date:  June 5, 2026

---

[3]     The Settlement Agreement permits Plaintiffs to recover "all attorneys' fees and costs . . . it incurs as a result of a breach of this Agreement by [Defendant]."  (Settlement Agreement at 3).  That recovery is therefore not limited to the uncured breaches that ultimately led Plaintiffs to file this motion.